UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

**DONNA W.,**[1]

      **Plaintiff,**

v.

Case No. 1:21-cv-11285
Magistrate Judge Norah McCann King

**KILOLO KIJAKAZI,**
**Acting Commissioner of Social Security,**

      **Defendant.**

**OPINION AND ORDER**

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Donna W. for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq*. Plaintiff appeals from the final decision of the Commissioner of Social Security denying that application.[2] After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure and Local Civil Rule 9.1(f). For the reasons that follow, the Court the Court reverses the Commissioner's decision and remands the matter for further proceedings.

**I.    PROCEDURAL HISTORY**

On May 2, 2018, Plaintiff filed her application for benefits, alleging that she has been disabled since April 2, 2016. R. 95, 108, 232–40. The application was denied initially and upon

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* D.N.J. Standing Order 2021-10.
[2] Kilolo Kijakazi, the Acting Commissioner of Social Security, is substituted as Defendant in her official capacity. *See* Fed. R. Civ. P. 25(d).

1

reconsideration. R. 122–26, 130–32. Plaintiff sought a *de novo* hearing before an administrative law judge. R. 133–39. Administrative Law Judge ("ALJ") Lisa Hibner Olson held a hearing on November 21, 2019, at which Plaintiff, who was represented by counsel, testified. R. 67–94. The ALJ conducted a second hearing on March 5, 2020, at which Plaintiff, who was again represented by counsel, again testified, as did a vocational expert. R. 49–66. In a decision dated April 2, 2020, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act from May 2, 2018, the date on which the application was filed, through the date of that decision. R. 25–43. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on March 16, 2021. R. 14–19. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On May 4, 2022, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 15.[3] On that same day, the case was reassigned to the undersigned. ECF No. 16. The matter is ripe for disposition.

**II.    LEGAL STANDARD**

    **A.    Standard of Review**

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). The United States Supreme Court has

---

[3] The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

explained this standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see, e.g.*, *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham.");

*see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4. The ALJ's decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short

paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981). Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016). A decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation omitted); *see A.B.*, 166 F. Supp.3d at 518.

**B.     Sequential Evaluation Process**

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. §

416.920(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 416.920(b). If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 416.920(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 416.920(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id*. at § 416.909. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 416.920(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in

the national economy. 20 C.F.R. § 416.920(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

**III.    ALJ DECISION AND APPELLATE ISSUES**

Plaintiff was 51 years old on May 2, 2018, the date on which her application was filed. R. 42. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between that date and the date of the decision. R. 27.

At step two, the ALJ found that Plaintiff's generalized anxiety disorder; major depressive disorder; borderline personality disorder; and post-traumatic stress disorder were severe impairments. *Id*.  The ALJ also found that Plaintiff's diagnosed headaches and obesity and her alleged sciatica and left leg issues were not severe. R. 28.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 29–30.

At step four, the ALJ found that Plaintiff had the RFC to perform light work subject to various additional limitations. R. 31–42. The ALJ also found that this RFC did not permit the performance of Plaintiff's past relevant work as a sales clerk. R. 42.

At step five and relying on the testimony of the vocational expert, the ALJ found that a significant number of jobs—*e.g.,* approximately 420,000 jobs as a cleaner; approximately140,000 jobs as a price marker; and approximately 40,000 jobs as a mail sorter—existed in the national economy and could be performed by Plaintiff. R. 42–43. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from May 2, 2018, the application date, through the date of the decision. R. 43–44.

Plaintiff disagrees with the ALJ's findings at steps four and five and also challenges the constitutionality of the appointment of the Acting Commissioner; she asks that the decision be reversed and remanded with directions for the granting of benefits or, alternatively, for further proceedings. *Plaintiff's Memorandum of Law,* ECF No. 11; *Plaintiff's Reply Brief*, ECF No. 14. The Acting Commissioner takes the position that her decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 13.

IV.     SUMMARY OF RELEVANT RECORD EVIDENCE

    A.     **Medical Evidence, Function Reports, and Hearing Testimony**

On January 12, 2018, Plaintiff was admitted to an adult mental health unit for depression and suicidal ideation:

> The patient reported that she has been noncompliant with her medications for over a year and recently had a number of stressors that pushed her over the edge. She stated she has constant arguments and fights with her boyfriend and they cannot communicate civilly. She reported that they had been fighting verbally and physically, and from her description, it appears they have high expressed emotional relationships. The patient also stated a month ago, she got contacted by her daughter, whom she gave up for adoption when the daughter was approximately 4 years old. The patient stated that at that time, she was 20 years old. It was not a planned pregnancy, and she "didn't know how to be a mom". She was under pressure from her mother and her aunt, and felt that other family members were trying to take away custody from her. The patient was feeling guilty. She was feeling sad, and her emotional instability escalated to a point where she was feeling suicidal. The patient brought herself to the Cape Regional Medical Center where she was evaluated, medically cleared, and subsequently referred to Cape Counseling. The patient was voluntary for hospitalization.

R. 475 (noting further that Plaintiff reported that "she had 5 psychiatric hospitalizations including involuntary hospitalizations and they were all in Pennsylvania. Her last psychiatric hospitalization was in Friends Hospital approximately 4 years ago, and at that time, she

8

attempted suicide by hanging herself"), 476 ("She admitted history of violent behaviors[.]"). Plaintiff was diagnosed with bipolar disorder, intermittent explosive disorder, and cannabis use disorder. R. 474. Plaintiff was treated with medication during her stay in the hospital, but became verbally aggressive with staff and peers:

> During the course of hospital treatment, at this time the client was started on Depakote and Neurontin for mood stability as well as Seroquel for depression, anxiety, and behavior. The client was very explosive on the unit. She was verbally aggressive with staff and peers and perseverated on minor issues on the unit. The client remained very angry and hostile while on the unit and was very loud and argumentative. At first, she was willing to stay a few days to get medication stabilization; however, after being set off very easily by other clients on the unit, the client decided that she would prefer to be discharged.

R. 473. Upon discharge on January 16, 2018, Plaintiff "denied any suicidal ideation; however, she remained very labile and highly irritable and explosive. The client will return home to live with her significant other and she was referred to outpatient services for continuation of medical management and outpatient programming." *Id*.

Plaintiff's friend, Bruce Corcoran,[4] completed a Third Party Function Report on May 19, 2018. R. 292–99. Mr. Corcoran indicated, *inter alia*, that he has known Plaintiff for ten years and that she lives in his house. R. 292. According to Mr. Corcoran, Plaintiff rarely goes outside, does not spend time with others, does not go out on a regular basis, and has trouble getting along with family, friends, neighbors, and others. R. 295–97. Asked whether Plaintiff gets along with authority figures, such as "police, bosses, landlords or teachers[,]" Mr. Corcoran responded that Plaintiff "[d]oesn't[.]" R. 298. He responded in the affirmative when asked whether Plaintiff was ever fired or laid off from a job because of problems getting along with other people. *Id*.

In her Function Report dated June 19, 2018, Plaintiff stated, *inter alia*, as follows: "I hate

---

[4] The record also refers to Mr. Corcoran is Plaintiff's boyfriend or significant other. R. 393, 511, 577, 761.

9

my family & don't get along with anybody." R. 320. When asked to describe any changes in social activities since illnesses, injuries, or conditions began, Plaintiff stated that she does not "go anywhere like that." *Id*. Asked whether she gets along with authority figures, such as "police, bosses, landlords or teachers," Plaintiff responded, "I don't get along with anyone[.]" R. 322. She responded in the affirmative when asked whether she had ever been fired or laid off from a job because of problems getting along with other people and explained: "Walmart, fired for throwing something, bad attitude[.]" *Id*.

On November 19, 2018, Plaintiff reported to a licensed clinical social worker, Josephine Quinn, that Plaintiff felt like she could not work because she "hates people" and has difficulty interacting with others. R. 664.

On March 24, 2019, Plaintiff presented to an emergency department with suicidal ideation and plans to hang herself and thoughts of killing one of her brothers:

> Pt is a 52 yo white female brought in to ER by self due to SI [suicidal ideation] with plan to hang self. Pt reports that she has been depressed and upset lately, she has been drinking for the past two weeks and fighting "with my old man". Pt reports her last drink was Thursday. She states that their fights have been physical "on both sides" and that she has "gone after him". She reports she has been very depressed, not sleeping much and not eating well. She has been having ong[o]ing SI with plan to kill herself via hanging. Pt admits she did try to kill herself via hanging 6 or 7 years ago and ended up being cut down by the fire department.
>
> Pt reports that she "has rage" and that she is always angry. Pt discussed at length her issues with her family and her estranged daughter who she gave up at birth. Pt states that her brother Andy "said some real mean shit" and that she has been having thoughts of killing him for the past ten months or so. Pt reports that she "doesn't want to do it but it's his fault" and that she doesn't feel like she can control her anger. She knows that he drives a bucket truck and works on electrical lines and has "been looking for him but there are a lot of bucket trucks, you know?".
>
> Pt denies A/VH [auditory/visual hallucinations]. Pl reports that she was attending outpatient therapy but stopped going because the nurse at Complete Care "really pissed me off" and she didn't want to return even though she was seeing the social worker there. Pt reports she has been taking medications "but not the Seroquel". Pl has 4 prior hospitalizations for SI/attempts "but this is the worst I've ever felt".

R. 754–55.

At the administrative hearing on November 21, 2019, Plaintiff testified, *inter alia*, that she does not get along with others, including her family. R. 81, 86. She is not sure if she is afraid of people, but feels like she cannot be around other people. R. 92.

### B. State Agency Reviewing Consultants

Joseph Wieliczko, Psy.D., conducted an initial review of Plaintiff's medical record on behalf of the state agency on August 16, 2018. R. 95–107. According to Dr. Wieliczk, Plaintiff was, *inter alia*, moderately limited in her ability to interact with the general public and to accept instructions and respond appropriately to criticism from supervisors, but was not significantly limited in her ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. R. 104.

Sharon Ames-Dennard, Ph.D., reviewed Plaintiff's medical record on reconsideration for the state agency on October 26, 2018. R. 108–21. She agreed with Dr. Wieliczko that Plaintiff was, *inter alia*, moderately limited in her ability to interact with the general public and accept instructions and respond appropriately to criticism from supervisors, but was not significantly limited in her ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. R. 117–18. Dr. Ames-Dennard nevertheless went on to find that Plaintiff "retains the capacity to interact appropriately[.]" R. 118.

## V. DISCUSSION

Plaintiff argues, *inter alia*, that substantial evidence does not support the ALJ's mental RFC determination, particularly as it relates to her ability to interact with others. *Plaintiff's*

*Memorandum of Law*, ECF No. 11, pp. 28–29; *Plaintiff's Reply Brief*, ECF No. 14, pp. 10–11.[5] This Court agrees.

A claimant's RFC is the most that the claimant can do despite her limitations. 20 C.F.R. § 416.945(a)(1). At the administrative hearing stage, the administrative law judge is charged with determining the claimant's RFC. 20 C.F.R. § 416.946(c); *see also Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) ("The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations.") (citations omitted). When determining a claimant's RFC, the ALJ has a duty to consider all the evidence. *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999). However, the ALJ need include only "credibly established" limitations. *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005); *see also Zirnsak v. Colvin*, 777 F.3d 607, 615 (3d Cir. 2014) (stating that the ALJ has discretion to choose whether to include "a limitation [that[ is supported by medical evidence, but is opposed by other evidence in the record" but "[t]his discretion is not unfettered—the ALJ cannot reject evidence of a limitation for an unsupported reason" and stating that "the ALJ also has the discretion to include a limitation that is not supported by any medical evidence if the ALJ finds the impairment otherwise credible").

In the case presently before the Court, the ALJ determined that Plaintiff had the RFC to perform a limited range of light work as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) with the following additional limitations: occasionally climbing ramps or stairs; occasionally climbing ladders, ropes or scaffolds; occasionally balancing, stooping, kneeling, crouching and crawling; no exposure to workplace hazards such as moving machinery or unprotected heights; can perform simple, routine tasks; can only perform a low stress job defined as having only occasional

---

[5] Although Plaintiff raises this argument and attacks the RFC in a section relating to a step five challenge, *see id.*, the Court receives this argument as a challenge to the RFC determination.

> decision making responsibilities, only occasional changes in the work setting, and work with only occasional judgment required on the job; *having only frequent interaction with supervisors and coworkers; and having only occasional interaction with the public*.

R. 31 (emphasis added).

In reaching this determination, the ALJ considered, *inter alia*, the opinions of the state agency reviewing consultants as follows:

> *Drs. Wieliczko and Ames-Dennard both supported their opinions with evidence from the record. However, their assessments of the claimant's ability to work fail to account for the claimant's difficultly [sic] in getting along with others and her inability to handle stress. The claimant reported in her Function Report that she has problems getting along with others (5E). Moreover, she testified that she was fired because she threw an object. She also told healthcare providers that she does not get along with her family and does not like being around people* (see discussion above). The claimant also stated in her Function Report that she does [not] handle stress well. *Her friend stated in his Third Party Function Report that the claimant does not handle changes in routine well (3E).* Furthermore, neither Dr. Wieliczko nor Dr. Ames-Dennard had the benefit of observing the claimant at the initial hearing or hearing her testify. Therefore, they did not hear the claimant testify about having headaches, sciatica or problems with her left leg giving out.

R. 40 (emphasis added). The ALJ went on to find that, "given the claimant's statements and testimony that she dislikes being around people, she is limited to having: only frequent interaction with supervisors and coworkers; and only occasional interaction with the public." R. 42.

Plaintiff challenges the ALJ's RFC limitations in connection with her ability to engage in social interactions, arguing that, in light of her documented difficulty getting along with others, the ALJ's findings, *i.e.*, limitations to occasional interaction with the public, but frequent interaction with supervisors and coworkers, were inconsistent and inexplicable. *Plaintiff's Memorandum of Law*, ECF No. 11, pp. 28–29 (citations to the record omitted). Plaintiff specifically contends that "there is no evidentiary basis to distinguish between the Plaintiff's ability to interact with co-workers from her ability to interact with supervisors." *Id*. at 29.

The Acting Commissioner does not specifically respond to Plaintiff's argument in this regard, arguing instead that there is no conflict between the vocational expert's testimony and the Dictionary of Occupational Titles and insisting that Plaintiff "had an improved ability to interact with others with regular therapy sessions and psychiatric medication compliance from May 2018 through April 2020." *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 13, pp. 24–25.

In reply, Plaintiff observes that the Acting Commissioner failed to address Plaintiff's specific argument—*i.e.,* that it was inconsistent to find that Plaintiff "can interact with supervisors and coworkers frequently, but that she can only interact with the public occasionally when the record shows a consistent inability to interact appropriately with all others - no matter their relationship with the Plaintiff." *Plaintiff's Reply Memorandum*, ECF No. 14, pp. 10–11. Plaintiff goes on to argue that the Acting Commissioner's defense to this argument amounts to nothing more than *post hoc* rationalization. *Id*. at 11.

Plaintiff's arguments are well taken. "The public, supervisors, and co-workers are distinct groups, and are separately addressed on the mental RFC forms. Thus, limitations on one type of interaction in the RFC does not account for limitations on the others." *Grinolds v. Colvin*, No. 15-30, 2015 WL 5178184, at *2 (W.D. Pa. Sept. 4, 2015). "[A]n inability to appropriately interact with or respond to criticism from supervisors is distinct from an inability to interact with either coworkers or the public. Indeed, the Social Security regulations treat the abilities to respond appropriately to 'supervision' and to get along with 'coworkers" as separate aspects of the 'basic mental demands' of unskilled work, noting that the 'substantial loss of ability to meet' any basic mental demand could 'severely limit the potential occupational base.'" *Melissa R. v. Berryhill*, No. 2:17-CV-07716-AFM, 2018 WL 6507898, at *4 (C.D. Cal. Dec. 11, 2018)

(quoting 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1)); *see also Tschannen v. Colvin*, No. 15-182, 2015 WL 7012531, at *1–2 (W.D. Pa. Nov. 12, 2015) ("[I]t is unclear how the RFC accommodates Plaintiff's moderate social limitations assigned by Dr. Brace and Dr. Newman. Those limitations were, apparently, accepted by the ALJ, but the RFC includes limitations relating only to supervisors and the public. . . . While the ALJ is certainly entitled to exclude limitations from an RFC, he must explain why he is doing so.").

In this case, at step four of the sequential evaluation, the ALJ recognized Plaintiff's difficulty in interacting with others, detailing these difficulties through recitation of the medical records, Plaintiff's hearing testimony and function report, as well as a third-party statement. R. 31–42. As set forth above, the ALJ specifically relied on and credited, *inter alia*, Plaintiff's statement about her difficulty getting along with others and her report that she had been fired from her job for throwing something when the ALJ found that the state agency "assessments of the claimant's ability to work fail to account for the claimant's difficulty in getting along with others[.]" R. 40 (citing Plaintiff's Function Report and hearing testimony). Notably, the ALJ also found at step three of the sequential evaluation that Plaintiff had a "moderate" limitation in her ability to interact with "others":

> In interacting with others, the claimant has a moderate limitation. The claimant does not get along with her family though the evidence indicates that is not her fault (see 1F through 13F). The claimant also feels like she is the outcast in her family. In her Function Report, the claimant stated that she does not get along anyone, including authority figures (5E). According to the claimant, her impairments affect her ability to get along with others (*Id*.). The claimant does not socialize with people other than her boyfriend. She does not participate in any social activities. The claimant testified that she was fired by Walmart for throwing something. The claimant also told a healthcare provider that she cannot work because she cannot stand to be around other people.

R. 29. Despite finding that Plaintiff had a moderate limitation in her ability to interact with "others" without distinguishing between family, authority figures, people at work, or any other

people, the RFC differentiates between the public (occasional interaction) and supervisors and coworkers (frequent interaction). R. 31. The ALJ never explained why he applied different levels of interaction in connection with these distinct groups. R. 29, 31–42. Moreover, the Court is unable to glean from the totality of the ALJ's decision why the ALJ determined that Plaintiff was capable of frequent interaction with supervisors and coworkers, particularly when the ALJ found a moderate limitation in interacting with "others[,]" R. 29, and after accepting Plaintiff's statements "that she does not get along with anyone, including authority figures[,]" *id.*, and "that she dislikes being around people[,]" R. 42; *see also* R. 31–32, 40. Based on this record, the ALJ's failure to explain why Plaintiff's ability to interact with supervisors and coworkers was not as limited as her ability to interact with the public cannot be viewed as harmless. *See Fisher v. Kijakazi*, No. 3:20-CV-00940, 2021 WL 3525050, at *1 (M.D. Pa. Aug. 11, 2021) ("Importantly, the ALJ provided no explanation for permitting only occasional interaction with coworkers, but frequent interaction with supervisors and the public. Any evidence supporting limitations in an ability to interact with others would seem to call for greater restrictions in Fisher's ability to interact with supervisors than with any other persons."); *cf. Tschannen v. Colvin*, No. 15-182, 2015 WL 7012531, at *1–2 (W.D. Pa. Nov. 12, 2015) ("[I]t is unclear how the RFC accommodates Plaintiff's moderate social limitations assigned by Dr. Brace and Dr. Newman. Those limitations were, apparently, accepted by the ALJ, but the RFC includes limitations relating only to supervisors and the public. . . . While the ALJ is certainly entitled to exclude limitations from an RFC, he must explain why he is doing so."). Accordingly, considering this apparent inconsistency and the ALJ's failure to explain this inconsistency, this Court cannot conclude that substantial evidence supports the ALJ's RFC determination. *See Sanford v. Comm'r of Soc. Sec.*, No. CIV. 13-0366 NLH, 2014 WL 1294710, at *2 (D.N.J. Mar.

28, 2014) ("The Third Circuit has held that access to the Commissioner's reasoning is [ ] essential to a meaningful court review.") (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

This Court therefore concludes that remand of the matter for further consideration of these issues is appropriate.[6] Moreover, remand is appropriate even if, upon further consideration of Plaintiff's RFC, the ALJ again concludes that Plaintiff is not entitled to benefits. *Cf. Zuschlag v. Comm'r of Soc. Sec. Admin.*, No. 18-CV-1949, 2020 WL 5525578, at *8 (D.N.J. Sept. 15, 2020) ("On remand, the ALJ may reach the same conclusion, but it must be based on a proper foundation."); *Jiminez v. Comm'r of Soc. Sec.*, No. CV 19-12662, 2020 WL 5105232, at *4 (D.N.J. Aug. 28, 2020) ("Once more, the ALJ did not provide an adequate explanation that would enable meaningful review, and the Court once more cannot determine what role lay speculation played in the ALJ's rejection of this detailed functional assessment from Dr. Marks."); *Cassidy v. Colvin*, No. 2:13-1203, 2014 WL 2041734, at *10 n.3 (W.D. Pa. May 16, 2014) ("Nevertheless, that the ALJ may have misinterpreted or misunderstood Dr. Kaplan's findings with regard to Plaintiff's postural activities does not absolve her of her error. Rather, it highlights the need for an ALJ to fully explain her findings. Otherwise, the district court is left to engage in this sort of speculation about how an ALJ arrived at her decision.").

## VI. CONCLUSION

For these reasons, the Court **REVERSES** the Commissioner's decision and **REMANDS** the matter for further proceedings consistent with this *Opinion and Order*.

---

[6] Plaintiff asserts a number of other errors in the Commissioner's final decision. Because the Court concludes that the matter must be remanded for further consideration of the RFC, including interactions with supervisors and coworkers, the Court does not consider those assertions.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**


Date:  January 27, 2023                              *s/Norah McCann King*
                                                                    NORAH McCANN KING
                                                         UNITED STATES MAGISTRATE JUDGE